FILED
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

2012 JUN 18 AM 11: 20

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALICIA BERNAZ, on Behalf of Herself and all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COUNTRY LIFE, LLC, and DESERTESSENCE.COM, LLC,<br><br>Defendant. | Civil Action No. CV 12-3026<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

SUMMONS ISSUED

BIANCO, J.
TOMLINSON, M.J.

Plaintiff Alicia Bernaz, ("Plaintiff"), brings this action against Country Life, LLC and DesertEssence.com, LLC (collectively "Country Life" or the "Defendants") on behalf of herself and all others similarly situated. Plaintiff makes the following allegations upon information and belief, except as to allegations specifically pertaining to her, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of purchasers of Desert Essence Organics line of personal care products ("Desert Essence Organics"), marketed by Defendants as organic products. In reality, Desert Essence Organics are not organic as those terms are understood by the consuming public at which Country Life's deceptive promotion, labeling and advertising has been directed, and in fact, Defendants have misled, confused and deceived Plaintiff and the consuming public desiring to purchase personal care products that are organic or are made with organic ingredients.

2. Indeed, the various Desert Essence Organics products contain petrochemicals and synthetic chemicals as ingredients including, but not limited to: Cocamidopropyl Betaine,

Glyceryl Stearate, Dimethicone, Ester-C Sorbitol, Tocopheryl Acetate, Tocopheryl Nicotinate, Potassium Hydroxide, Potassium Sorbate and Sodium Benzoate.

3. When Plaintiff and the Class members purchased Desert Essence Organics, they relied on Defendants' representation that Desert Essence Organics were organic. The word "organic" is not regulated on personal care products labeling such as Defendants' as it is on food products labels. Due to the lax regulation, many personal care products including Desert Essence Organics are marketed as "organic," however, unless they are USDA certified, the main cleansing ingredients and preservatives are usually made with synthetic and petrochemical compounds.

4. Plaintiff asserts claims on her own behalf and on behalf of a nationwide class for violations of the Magnuson-Moss Act, 15 U.S.C. § 2301, *et. seq.*, unjust enrichment and breach of express and implied warranties, violation of the New York General Business Law §349, *et seq.*, and violation of the New York General Business Law §350, *et seq.*

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question). This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

6. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff, as well as most members of the proposed class, are citizens of states different from Defendants.

7. Venue is proper in this District pursuant to 28 U.S.C. §1391(a), because Defendant Country Life is headquartered in this District, and Defendants do business in this

District and the events giving rise to Plaintiff's claim occurred in this District, as is more fully set forth below.

**THE PARTIES**

8. Plaintiff, Alicia Bernaz, is a citizen of New York State who resides in Richmond County. Alicia Bernaz purchased and used Desert Essence Organics from retail stores in Richmond County.

9. Defendant Country Life, LLC is a New York limited liability Company with its principal place of business located at 180 Vanderbilt Motor Parkway, Hauppauge, New York 11788.

10. Defendant DesertEssence.com, LLC is a New York limited liability Company with its principal place of business located at 180 Vanderbilt Motor Parkway, Hauppauge, New York 11788.

11. Defendants Country Life, LLC and DesertEssence.com, LLC collectively produce, manufacture and sell Desert Essence Organics in New York and nationwide.

**FACTS COMMON TO ALL CAUSES OF ACTION**

**ORGANIC PERSONAL CARE PRODUCTS**

12. The term "organic" is used to refer to both food and non-food products that use main ingredients derived from organic farms that do not use synthetic fertilizers, herbicides or pesticides, and are not over processed or synthetically preserved. Organic personal care products, a subset of the overall market for "natural" personal care products, include liquid soaps, body washes, shampoos, skin moisturizers, lotions and creams, lip balms, make-up and other cosmetic products.

13. According to the Organic Trade Association ("OTA"), organic non-food sales grew 9.7 percent in 2010, to reach $1.97 billion.[1] Labeling of all personal care products is regulated by the Food and Drug Administration (FDA) and FDA has yet to regulate "organic" claims on personal care products. The National Organic Program (NOP), which regulates organic foods, currently lacks the legal authority to regulate "organic" label claims of personal care products, except when personal care operations voluntarily choose to meet organic food standards, gain NOP certification, and use the USDA Organic seal.

14. According to the Natural Marketing Institute's ("NMI") 2009 LOHAS Consumer Trends Database, 25% of U.S. adults purchased natural or organic personal care products in the past six months. A recent NMI survey indicated that more than half of all U.S. consumers want personal care products made with natural and premium ingredients and 44% look for organic ingredients specifically. NMI, *Evolution of Natural, Organic and Premium Personal Care* (2006). Another recent NMI survey found that 52% of consumers believe that "the personal care products they put on her skin are just as important as the healthy and natural foods they consume." NMI, 2008 Health and Wellness Trends Database, quoted in OTA, *The Regulation and Labeling of Organic Personal Care Products: Issues and Policy Approach* (2009).[2]

15. According to the OTA, the U.S. market for organic personal care products is estimated to be between $250 and $500 million. OTA, *The Regulation and Labeling of Organic Personal Care Products: Issues and Policy Approach* (2009).[3]

16. Skin, body and hair care products contain cleansing agents, known as "surfactants," and /or moisturizing agents, called "emollients," which are the main ingredients in

---

[1] *See* http://www.ota.com/organic/mt/business.html (last accessed on June 12, 2012).
[2] Available at http://www.ota.com/pics/documents/Microsoft%20Word%20-%20101909OTAPersonalCareWhitePaperFinal.pdf (last accessed June 12, 2012).
[3] *Id.*

such products. Many manufacturers, such as Defendants, brand personal care products as organic while still using the same non-organic surfactants present in mass market conventional personal care products, which are derived from petrochemicals or non-organic agricultural material that was produced through conventional, rather than organic methods which includes using synthetic fertilizers, pesticides or herbicides.

17. According to comments submitted by the Organic Consumers Association ("OCA") to the Federal Trade Commission ("FTC") regarding the Commission's Proposed Revisions to Guides for the Use of Environmental Marketing Claims,[4] in turning such agricultural material, such as coconut oil, into a surfactant, a manufacturer may convert the oils into fatty alcohols, by transesterifying the vegetable oil with methanol (a petrochemical) to make methyl esters, and then flow hydrogen through the methyl esters at high pressure in the presence of a metal catalyst. This process, known as hydrogenation, breaks down the methyl esters, leaving fatty alcohols and methanol, which can then be recovered. The resulting fatty alcohols can be used in their own right as emollient ingredients, or further reacted with other agricultural or petrochemical compounds, to produce surfactants or ester ingredients. Such ingredients are not organic.

18. In turning a fatty alcohol into a surfactant, a manufacturer may employ the process of sulfation, which entails introducing, in a falling film reactor, sulfuric ester group molecule into a fatty alcohol, such that sulfur from the sulfuric ester group molecule is linked through an oxygen atom to the fatty alcohol molecule. Sulfuric ester molecules are petroleum compounds derived as a byproduct of coal and petroleum refining. This process renders agricultural material (fatty alcohol) effective as surface cleansing agents. These products are not organic.

---

[4] Available at http://www.ftc.gov/os/comments/greenguiderevisions/00295-57100.pdf (last accessed June 12, 2012).

19. Plaintiff and other consumers of organic personal care products reasonably understand, expect and believe that a personal care product marketed as organic, does not contain petrochemicals, petrochemical compounds, or synthetic compounds including preservatives. Nor do reasonable consumers expect organic personal care products to contain cleansing or moisturizing agents derived from conventionally-produced agricultural materials.

**FALSE AND MISLEADING MARKETING OF DESERT ESSENCE ORGANICS**

20. In order to capitalize on the rapidly growing market for organic personal care products, Country Life began selling its line of Desert Essence Organics. Defendants repeatedly represent that Desert Essence Organics are organic personal care products. For example, Country Life makes the following representations in its marketing:








21. Country Life's line of Desert Essence Organics are marketed as organic, but contains cleansing agents consisting of and/or containing petrochemicals or petrochemical compounds. The cleansing ingredients in Desert Essence Organics also are derived from conventional, rather than organic, agricultural materials. Certain of the Desert Essence Organics are preserved with synthetic petrochemical preservatives.

22. Indeed, the various Desert Essence Organics products contain petrochemicals and synthetic chemicals as ingredients including, but not limited to:

- Cocamidopropyl Betaine, made with the petrochemical Amidopropyl Betaine;
- Glyceryl Stearate, made with glycerin and stearic acid;
- Dimethicone, derived from petrochemicals;
- Ester-C Sorbitol, a synthetic sorbitol;
- Tocopheryl Acetate, made with synthetic hydroxyl;
- Tocopheryl Nicotinate, synthetic ester made with tocopherol and nicotinic acid;
- Potassium Hydroxide, inorganic caustic potash made with potassium chloride solutions;
- Potassium Sorbate, inorganic compound made with sorbic acid and potassium hydroxide; and
- Sodium Benzoate, inorganic compound made with benzoic acid and sodium hydroxide.

23. For example the ingredients of Desert Essence Organics Age Reversal Mineral Sunscreen SPF 30 contains:



24. Moreover, the ingredients of Desert Essence Organics Red Raspberry conditioner contains:



25. Additionally, the ingredients in Dessert Essence Organics Vanilla Chai Body Wash contain:




26. Similarly, Country Life's various Desert Essence Organics products contain principal cleansing agents derived from conventional, rather than organic agricultural material and contain petrochemicals and/or petrochemical compounds.

27. Reasonable consumers, including Plaintiff, do not expect products labeled and marketed as organic to contain principal cleansing agents derived from conventional rather than organic agricultural material and contain petrochemicals and/or petrochemical compounds.

28. By labeling and marketing Desert Essence Organics as organic, Country Life has deceived Plaintiff and the members of the Class.

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action on behalf of herself and all other similarly situated persons pursuant to Rule 23 of the *Federal Rules of Civil Procedure*.

30. Plaintiff seeks to represent a Class defined as all persons in the United States who purchased Desert Essence Organics. Excluded from the Class are persons or entities that

purchased Desert Essence Organics products for resale, Defendants and their subsidiaries and affiliates.

31. Plaintiff Bernaz further seeks to represent a subclass defined as all Class members who are New York residents or who purchased Desert Essence Organics products within the State of New York (hereafter, the "New York Subclass").

32. Members of the Class and Subclasses are so numerous that joinder of all members is impracticable. While the exact number of Class members is presently unknown, and can only be ascertained through appropriate discovery, Plaintiff believes the members of the Class exceed hundreds of thousands, if not millions of persons.

33. Common questions of law and fact exist as to all members of the Class and Subclasses and predominate over any questions solely affecting individual members of the Class and Subclasses. Among questions of law and fact common to the Class and Subclasses are:

a. Whether Desert Essence Organics manufactured, marketed and sold by Defendants are labeled and marketed as organic;

b. Whether Desert Essence Organics manufactured, marketed and sold by Defendants are organic;

c. Whether Defendants expressly and/or impliedly warranted that Desert Essence Organics are organic;

d. Whether Defendants breached warranties by making the representations above;

e. Whether Defendants have been unjustly enriched as a result of their unlawful business practices;

f. Whether Defendants' actions as described above violated the Magnuson-Moss Act, 15 U.S.C. § 201, *et seq.*,

g. Whether Defendants' actions as described above violated the New York General Business Law § 349, *et seq.*;

h. Whether Defendants' actions as described above violated the New York General Business Law § 350, *et seq.*;

i. Whether Defendants should be enjoined from continuing the above-described practices; and

j. Whether Defendants should be required to make restitution, disgorge profits, reimburse losses, pay damages and pay treble damages as a result of the above described practices.

34. Plaintiff's claims are typical of the claims of Class and New York Subclass members because Plaintiff and each member of the Class purchased Desert Essence Organics and suffered a loss of money as a result of that purchase.

35. Plaintiff is an adequate representative of the Class and New York Subclass because her interests do not conflict with the interests of the Class and New York Subclass members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class and New York Subclass will be fairly and adequately protected by Plaintiff and her counsel.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by the individual members of the Class and New York Subclass may be relatively small, the expense and burden of individual litigation make it impossible for members

of the Class and Subclass to individually redress the wrongs done to them. There will be no difficulty in the management of this class action.

**COUNT I**
**VIOLATION OF MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq.*)**

37. Plaintiff and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

38. Plaintiff brings this Count I individually and on behalf of the members of the Class, against all Defendants.

39. Desert Essence Organics products are consumer products as defined in 15 U.S.C. § 2301(1).

40. Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

41. Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

42. In connection with the sale of Desert Essence Organics, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that the products were organic.

43. By reason of Defendants' breach of the express written warranties stating that the products were organic, Defendants violated the statutory rights due Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiff and Class members.

**COUNT II**
**UNJUST ENRICHMENT**

44. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

45. Plaintiff brings Count II individually and on behalf of the members of the nationwide Class against the Defendant.

46. Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched. At the core of each state's law are two fundamental elements—the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, New York law applies to those claims.

47. Plaintiff and Class members conferred a benefit on Defendants by purchasing Desert Essence Organics.

48. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of Desert Essence Organics, which retention under these circumstances is unjust and inequitable because Defendants misrepresented the facts concerning the product and caused Plaintiff and the Class to lose money as a result thereof.

49. Plaintiff and Class members suffered a loss of money as a result of Defendants' unjust enrichment because: (a) they would not have purchased Desert Essence Organics on the same terms if the true facts concerning the product had been known; (b) they paid a price premium due to the false representations about Desert Essence Organics; and (c) Desert Essence Organics are not organic.

50. Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class members for their unjust enrichment, as ordered by the Court.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**

51. Plaintiff repeats and realleges each and every allegation above, as if set forth in full herein.

52. Plaintiff brings this Count III individually and on behalf of the members of the nationwide Class against all Defendants.

53. Defendants expressly warranted in their marketing, advertising and promotion of Desert Essence Organics by representing that those products are organic.

54. Plaintiff and members of the Class purchased Desert Essence Organics based upon the above said express warranty.

55. Defendants breached their express warranty by selling a product that is not organic.

56. As a direct and proximate result of Defendants' breaches of their express warranty, Plaintiff and members of the Class have been damaged in that they did not receive the product as specifically warranted and/or paid a premium for the product based on the Defendants' representations.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

57. Plaintiff repeats and realleges each and every allegation above, as if set forth in full herein.

58. Plaintiff brings this Count IV individually and on behalf of the members of the nationwide Class against all Defendants

59. Defendants impliedly warranted that the Desert Essence Organics products they manufactured, sold and distributed were organic and that the products were merchantable and fit for their intended purpose. Defendants did so with the intent to induce Plaintiff and members of the Class to purchase those products.

60. Defendants breached their implied warranties in that the products are organic, as marketed, advertised and promoted.

61. Had Plaintiff and the members of the Class known the true facts, they either would not have purchased the products or would not have been willing to pay the premium price Defendants charged for the products.

**COUNT V**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**

62. Plaintiff and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

63. Plaintiff brings this claim on behalf of the New York Subclass under New York law.

64. Country Life engaged in a false and misleading marketing and advertising claim, representing that Desert Essence Organics products are organic, when in fact they contained principal cleansing agents derived from conventional rather than organic agricultural material and contain petrochemicals and/or petrochemical compounds.

65. As set for above, by advertising, marketing, distributing and/or selling its Desert Essence Organics products to Plaintiff and the New York Subclass, Country Life engaged in, and continues to engage in, deceptive acts and practices.

66. Plaintiff and other members of the New York Subclass further seek to enjoin such unlawful deceptive acts and practices as described above. Each of the members of the New York

Subclass will be irreparably harmed unless the unlawful actions of Country Life are enjoined in that Country Life will continue to falsely and misleadingly advertise Desert Essence Organics products as being organic.

67. Absent injunctive relief, Country Life will continue to advertise, market and sell Desert Essence Organics as organic even though they contained principal cleansing agents derived from conventional rather than organic agricultural material and contain petrochemicals and/or petrochemical compounds rendering the products worthless, to the detriment of consumers.

68. In this regard, Country Life has violated, and continue to violate, G.B.L. § 349, which makes deceptive acts and practices unlawful. As a direct and proximate result of Country Life's violation of G.B.L. § 349 as alleged above, Plaintiff and other members of the New York Subclass have suffered damages, in an amount to be determined at trial.

## COUNT VI
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW§ 350

69. Plaintiff and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

70. Plaintiff brings this claim on behalf of the New York Subclass under New York law.

71. Country Life engaged in a false and misleading marketing and advertising claim, representing that Desert Essence Organics products are organic, when in fact they contained principal cleansing agents derived from conventional rather than organic agricultural material and contain petrochemicals and/or petrochemical compounds.

72. New York G.B.L. § 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."

73. As set for above, by advertising, marketing, distributing and/or selling Desert Essence Organics products to Plaintiff and the New York Subclass, Country Life engaged in, and continues to engage in, false advertising.

74. Plaintiff and other members of the New York Subclass further seek to enjoin such false advertising as described above. Each of the members of the New York Subclass will be irreparably harmed unless the unlawful actions of Country Life are enjoined in that Country Life will continue to falsely and misleadingly advertise and market Desert Essence Organics products as organic. Therefore, Plaintiff and the New York Subclass request an order granting them injunctive relief ordering appropriate disclosures and/or disclaimers in the advertising, marketing and promotion of the Desert Essence Organics products.

75. Absent such injunctive relief, Country Life will continue to advertise, market and sell Desert Essence Organics as organic even though they contained principal cleansing agents derived from conventional, rather than organic agricultural material and contain petrochemicals and/or petrochemical compounds rendering the products worthless, to the detriment of consumers.

76. In this regard, Country Life has violated, and continue to violate, G.B.L. § 350, which makes deceptive acts and practices unlawful. As a direct and proximate result of Country Life's violation of G.B.L. § 350 as alleged above, Plaintiff and other members of the New York Subclass have suffered damages, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

Plaintiff, on her own behalf and on behalf of the Class, prays for the following relief:

A. For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the *Federal Rules of Civil Procedure* and naming Plaintiff as Class Representative and their attorneys as Class Counsel to represent the Class members;

B. For an order declaring that Defendants' conduct violates the statutes referenced herein;

C. For an order finding in favor of Plaintiff, the Class and the New York Subclass on all counts asserted herein;

D. For an order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper; and

H. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

**JURY DEMAND**

Plaintiff demands trial by jury

Dated: June 18, 2012

FARUQI & FARUQI, LLP

Juan E. Monteverde (JM-8169)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331
Email: jmonteverde@faruqilaw.com